IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GLORIA A. HUFF,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CIVIL ACTION NO. 11-266-N
                                         )
MICHAEL J. ASTRUE, Commissioner          )
Of Social Security,                      )

ORDER

In this action, plaintiff appeals the final decision of the Commissioner partially denying her claim for disability benefits and supplemental security income benefits.  The plaintiff sought benefits for a period beginning May 22, 2008; the ALJ found that plaintiff was disabled but established that August 16, 2009, was the onset date for such disability.  The parties consented to the exercise of jurisdiction by the undersigned magistrate judge (doc. 17) and the case was transferred to the undersigned for all purposes including entry of judgment (doc. 18) pursuant to 28 U.S.C. § 636(c).  Oral argument was held before the undersigned on July 18, 2012, at which Colin Kemmerly, Esq., appeared on behalf of the plaintiff and Assistant United States Attorney Patricia Beyer, Esq., appeared for the Commissioner.  After careful consideration of the arguments of counsel and all matters in the record, including the briefs of the parties, the undersigned finds that the decision of the Commissioner is due to be AFFIRMED.

Background

Plaintiff filed an application for a period of disability, disability insurance benefits and Supplemental Security Income on September 29, 2009.  After denial at the initial level, plaintiff sought and received a hearing, which was conducted by an Administrative Law Judge on December 2, 2009.  On December 16, 2009, the ALJ issued a partially-favorable decision,

finding that plaintiff was not disabled as of May 22, 2008, the date claimed by plaintiff, but became disabled on August 16, 2009.  Following denial of review by the Appeals Council, on April 12, 2011, the decision of the ALJ became the final decision of the Commissioner.  Plaintiff timely filed the instant appeal.

Plaintiff was born in 1956.  She was 52 years of age at the alleged onset date of her disability.  Social Security regulations categorize a person aged 50 – 54 years old as "Approaching Advanced Age."  *See* 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.00 (h)(1), 202.00(d).  Plaintiff graduated high school and completed two years of college.  She had worked for many years as a preschool teacher.

The ALJ determined that plaintiff suffered from the following severe impairments: hypertension, obesity, diabetes mellitus, hyperlipidemia, hypothyroidism, obstructive sleep apnea, degenerative disc disease of the thoracic and lumbar spine, and arthritis of the left shoulder.  He did not make a separate finding concerning the severity of several conditions (retinopathy, neuropathy and nephropathy) caused by her diabetes.  He found that her depression, as well as her episodes of gastritis and diverticulitis, were not severe.

The ALJ found that plaintiff could perform her past relevant work as a preschool teacher despite her proven limitations up to August 16, 2009.  However, the record contained a Clinical Assessment of Fatigue form completed on November 15, 2009, by Dr. John F. Ledoux, one of plaintiff's treating physicians, which stated that plaintiff had been suffering debilitating fatigue for three months prior to the report. Based on that report, the ALJ determined that plaintiff was disabled as of August 16, 2009, the beginning of that three-month period.

<u>Scope of Judicial Review</u>

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. <u>Washington v. Astrue</u>, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); <u>Fields v. Harris</u>, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-40 (11th Cir. 1997); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987); <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1180 (11th Cir. 1986); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance.  In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Hillsman</u>, 804 F.2d at 1180; <u>Bloodsworth</u>, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  <u>Barron v. Sullivan</u>, 924 F.2d 227, 230

3

(11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  Foote
v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999.

Statutory and Regulatory Framework

      The Social Security Act's general disability insurance benefits program ("DIB") provides
income to individuals who are forced into involuntary, premature retirement, provided they are
both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security
Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general
public assistance measure providing an additional resource to the aged, blind, and disabled to
assure that their income does not fall below the poverty line. Eligibility for SSI is based upon
proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However,
despite the fact they are separate programs, the law and regulations governing a claim for DIB
and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the
purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455,
1456 n .1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the
meaning of the Social Security Act which defines disability in virtually identical language for
both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a),
416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or
> mental impairment" is one resulting from anatomical, physiological, or
> psychological abnormalities which are demonstrable by medically acceptable
> clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3),
> 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[1]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. Id.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). Id. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available

---

[1] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

in the national economy the claimant can perform. Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids") ,or hear testimony from a vocational expert (VE). Id. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." Id.

Analysis

*Issues on Appeal*

Plaintiff raises the following three issues in support of her appeal:

1. That the ALJ erred in failing to find that plaintiff suffered from the following severe impairments: depression, retinopathy, neuropathy affecting her extremities, and nephropathy affecting her kidneys.

2. That the ALJ erred in finding that plaintiff could perform her past relevant work as a preschool teacher prior to the date the ALJ established for her disability.

3. That the ALJ erred by failing to credit plaintiff's testimony concerning her pain and postural limitations.

Finding Severe Impairments:

The ALJ considered a long list of potential impairments suffered by plaintiff, and found that, as of August 16, 2009, her impairments became disabling.  Plaintiff complains that the ALJ improperly failed to find the plaintiff's diabetes-related symptoms of retinopathy, neuropathy

and nephropathy were severe impairments.  In addition, plaintiff argues that the ALJ erred in failing to find that her depression was a 'severe' impairment.[2]

The Commissioner must determine whether each of claimant's impairments is severe, that is, "whether it significantly limits [a] claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (*citing* 20 C.F.R. § 404.1520(c)).[3] The claimant bears a minimal burden in showing severity, such that he or she need only show that the impairment is "not so slight and its effect is not so minimal" as to be trivial.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). In other words, an impairment is not severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam); *see* Gray v. Comm'r of Soc. Sec., 426 Fed.Appx. 751, 753 (11th Cir. 2011).

In finding that plaintiff's depression did not constitute a severe impairment, the ALJ relied on the report of John W. Davis, Ph.D. (doc. 10 at 318-23) who performed a consultive mental examination ("CE") of plaintiff on February 3, 2009.  It appears that substantial evidence supports the ALJ's reliance on that report and the conclusion that "[p]rior to the February 3,

---

[2] The ALJ found certain other impairments to be non-severe, but plaintiff does not contest those findings.

[3] Under the regulations, "basic work activities" include physical functions, such as walking, lifting, pushing, or reaching, and also include mental functions, such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1–6).

2009 consultive examination, there is scant evidence, if any, of the claimant complaining of depression or anxiety or receiving treatment for the same." Id. at 18-19.

Plaintiff argues that the evidence hinted at a greater impairment as a result of plaintiff's depression; plaintiff points to the CE report by Dr. Davis which contained his guarded prognosis that plaintiff's "mental state is a function of her general medical condition and is likely to improve or deteriorate, correlated with her general medical condition."  Plaintiff connects this to the ALJ's finding that plaintiff suffered from several physical conditions.  Doc. 11 at 5-6.[4]  There is thus some evidence suggesting, however weakly, that plaintiff's depression might have gotten worse after her initial filing.  However, Dr. Davis examined plaintiff in February 2009, and the ALJ, basing his decision on Dr. Davis' report, found that plaintiff did not have a severe mental impairment; even if the ALJ was required from the record before the court to find that plaintiff's depression worsened prior to the examination, along with her physical condition, such a conclusion would simply mean that plaintiff's depression was not necessarily as bad during the year prior to the consultive examination as it was at that time.  Even had the court made or been required to make such a conclusion, it would not have negated the ALJ's determination that plaintiff's depression was not shown to be a severe impairment.

The ALJ found that plaintiff's diabetes constituted a severe impairment; in so doing, the ALJ held that plaintiff's "primary" impairment of diabetes "has caused retinopathy impacting the claimant's vision, neuropathy impacting the claimant's extremities, and nephropathy impacting her kidneys."  Doc. 10 at 17-18.  The ALJ did not separately discuss whether these secondary

---

[4] Though plaintiff states that the ALJ had found that plaintiff had several conditions which had worsened since her onset date, id., her footnote makes clear the ALJ simply found that plaintiff had several severe impairments.  The court can find no language in the decision in which the ALJ held that plaintiff's conditions, with the exception of her vision, had worsened or had done so consistently during that time.

conditions were also severe, and thus clearly considered those subsidiary conditions as part of the severe impairment of diabetes.

Plaintiff has cited no authority which establishes that, as a matter of law, the ALJ is required to make a separate finding on the severity of conditions or complications which are secondary to the plaintiff's diabetes. Regardless, the ALJ expressly addressed limitations from several diabetes-related conditions in addressing plaintiff's residual functional capacity. Doc. 10 at 19 (considered listing 1.04 relating to loss of visual acuity as well as 9.08 which addresses diabetes mellitus); 20 (list of impairments includes eyesight, neuropathy, weakness and tingling in upper extremities); 22 (neuropathic complications of diabetes; visual impairment).

The Commissioner argues that, once the ALJ proceeds past the second step of the sequential evaluation, which determines whether plaintiff's impairments are severe, the issue of severity of specific impairments is irrelevant "because the ALJ was required to consider all of her impairments—severe and nonsevere—as well as any related symptoms in determining her residual functional capacity." Doc. 12 at 5-6 (*citing* 20 C.F.R. § 404.1545, which sets forth the ALJ's duty to consider all impairments). As demonstrated by the cases cited by the Commissioner, this assertion goes too far. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (failure to find specific impairment 'severe' is harmless error where the ALJ considered all impairments in remainder of analysis); Delia v. Comm'r of Soc. Sec., 2011 WL 2748622 (11th Cir. 2011) ("Because the ALJ gave full consideration to the consequences of Delia's mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless and is not cause for reversal." *Citing* Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984)). In each of these cases, as well as in Reeves, the courts did not rule that the error was irrelevant, nor that the *requirement* that the ALJ consider all impairments was enough

to make the error harmless; only where the record shows that the ALJ actually did consider all impairments, severe and non-severe, at later stages of the analysis have the courts found that the failure to find a particular impairment to be severe was harmless error.  Thus, if the ALJ were required to find separately the severity of each diabetes-related condition, the court would have to consider whether the ALJ addressed all of the plaintiff's claimed impairments in reaching a determination of plaintiff's residual functional capacity.[5]

As noted above, the ALJ expressly considered her visual problems, which plaintiff stated kept her from driving; the ALJ found that plaintiff retained the ability to use both near and far visual acuity occasionally, and that plaintiff had a normal visual field and that her vision was correctable to 20/60 in her right eye and 20/50 in her left eye.  Doc. 10 at 22.  The ALJ considered neuropathy in terms of plaintiff's leg and arm pain, which may also have included symptoms related to plaintiff's musculoskeletal impairments of her back, left shoulder and one knee as well as mentioning plaintiff's testimony of weakness and tingling in her upper extremities.  The ALJ mentioned plaintiff's nephropathy, but did not cite any specific limitations related to that condition; however, the record does not appear to include support for any specific kidney or nephropathy-related limitation on her ability to work.  Thus, it appears that the ALJ has in this case addressed all of the subsidiary conditions related to plaintiff's diabetes.  To the extent that the ALJ was required to make a separate finding concerning the severity of limitations caused by each of her diabetes-related conditions, such error was harmless.

---

[5] Plaintiff also points to a report by a non-examining psychologist who considered the administrative record for the state agency.  It is axiomatic that the opinions of an examining medical source are generally entitled to greater weight than those of a non-examining source.  *See* 20 C.F.R. § 404.1527(d)(1), (2); Reynolds-Buckley v. Comm'r of Soc. Sec., 457 Fed.Appx. 862, 864 (11th Cir. 2012); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The court finds no support in the briefs or the record for the plaintiff's apparent argument that reliance on the examining source in this case was error, regardless of whether the ALJ correctly described the agency reviewer's treatment of the CE report.

For the foregoing reasons, the court finds in favor of the Commissioner on plaintiff's first assignment of error.

Past Relevant Work

Plaintiff asserts that the ALJ erred in finding that she could perform her past relevant work as a preschool teacher. The ALJ found that, before becoming disabled on August 16, 2009, plaintiff had the residual functional capacity "to lift 10 pounds frequently and 20 pounds occasionally and to sit/stand for up to six hours in an eight hour work day…to occasionally stoop, kneel and crouch..to perform frequent reaching and handling, and use her near and far visual acuity occasionally." Doc. 10 at 22. The ALJ compared that RFC to the physical and mental requirements stated in the Dictionary of Occupational Titles for the job of preschool teacher, and found that plaintiff's RFC met or exceeded the requirements for that job as it is generally performed. That ruling was based on hearing testimony from a vocational expert.

Plaintiff argues that the state agency found that she could not perform the mental or physical demands of her prior work as a preschool teacher. On review of the state agency's decision on disability, Social Security regulations provide that the ALJ is not bound by a prior determination of disability. 20 C.F.R. § 404.1503(d)(on review of state agency determination on disability, the Commissioner may find claimant disabled or not disabled, "regardless of what the State agency found.").

Plaintiff also notes that the ALJ found that plaintiff suffered from eight separate severe physical impairments and argues that there was not substantial evidence in the record to support the ALJ's determination that the claimant nonetheless could perform light work.    While presenting a somewhat uncommon situation, the mere number of impairments is inadequate to prescribe any particular RFC finding and thus is not itself determinative of the issue of the

plaintiff's ability to perform her past work.  Plaintiff points to no other evidence of specific physical limitations which the ALJ ignored in his determination that would preclude a finding that plaintiff could perform the physical demands of the job.

Instead, plaintiff argues, as she did in her first issue, that she also had a severe mental impairment which precluded skilled work such as preschool teacher.  As set forth above, the ALJ's determination that plaintiff's depression was not severe was supported by substantial evidence.  The plaintiff's evidence did not establish any specific limitations resulting from that condition; thus, the court finds that the existence of that mental impairment, whether designated severe or nonsevere, does not significantly affect the analysis of the current issue.  Plaintiff's second issue is without merit.

<u>Credibility of Plaintiff</u>

Plaintiff's final argument is that the ALJ erred by failing to fully credit plaintiff's hearing testimony concerning the extent of her pain and postural limitations.  One of the bases cited by the ALJ for discounting plaintiff's subjective complaints was the fact that plaintiff received unemployment benefits in the second, third and fourth quarter of 2008.  The ALJ discussed the matters related to plaintiff's credibility:

> The record reveals that the claimant failed to follow-up on recommendations made by her treating doctors, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. Her primary care physicians have noted that the claimant is not compliant with their diet and exercise recommendations, and that she continues to smoke half a pack of cigarettes a day despite their advice to the contrary.  (Exhibits 4F and 10F).

> In addition, the claimant's earnings record indicates that she received unemployment benefits in the second, third and fourth quarter of 2008.  (Exhibit 3D)).  This further damages the claimant's credibility because, by accepting unemployment benefits, the claimant was holder [sic] herself out as being ready, willing, and able to engage in substantial gainful activity.The undersigned acknowledges that the claimant was hospitalized in April of 2008 and July of2009

for shortness of breath and chest pain and that she was hospitalized in April of 2009 for blurred vision and left side numbness. (Exhibits 1F, 9F, and 14F).

The undersigned further recognizes that the claimant was diagnosed with a number of cardiac and diabetes related conditions including congestive heart failure, hypertensive urgency, and neuropathic complications of diabetes. (Id). Nevertheless, as discussed above – other than the acute episodes requiring hospitalization – the exam results from the claimant's primary care doctors support the finding that the claimant was able to perform light work with postural limitations.

Doc. 10 at 21-22.

Plaintiff complains that the ALJ failed to cite authority for his position; that the determination was somehow inconsistent with the ALJ's finding that plaintiff's impairments have progressively worsened since her onset date of May 22, 2008; and that the ALJ ignores evidence of hospitalizations in 2008. The plaintiff points to no specific issue for which the ALJ should have, but did not, cite legal authority; the court is aware of no necessity for such citations in support of any issue that would render the ALJ's credibility determination improper. As set forth above, the ALJ did not expressly find that any of plaintiff's conditions other than her vision continued to deteriorate from the claimed onset date to the date the ALJ found her to be disabled. The undersigned finds no holding which is inconsistent with the ALJ's credibility determination. Further, as conclusively demonstrated in the quoted language above, the plaintiff's claim that the ALJ ignored hospitalizations is incorrect.

Finally, plaintiff argues that, if the ALJ was entitled to discredit plaintiff's testimony concerning her impairments based on her receipt of unemployment benefits, that excuse disappeared at the end of 2008; thus, plaintiff concludes, disability would have been established as of January 1, 2009. This argument is faulty in several ways. First, the ALJ did not rely solely on the receipt of unemployment benefits and his remaining reasons were adequate to support the credibility determination. Second, the ALJ related the unemployment issue to the credibility of

13

plaintiff's subjective complaints of pain—the fact that she made an inconsistent statement concerning her condition in order to receive unemployment benefits is not a matter which automatically "switches off" the minute the benefits dry up.  Third, the ALJ found that—prior to the August 16, 2009, medical examination—there was insufficient objective medical evidence in the record of work-related limitations to find plaintiff disabled; that determination would not be altered by the loss of unemployment benefits.  Plaintiff's third issue on appeal is insufficient to justify reversal.

<u>Conclusion</u>

Upon careful review of the record and the briefs of the parties, and for the reasons set forth above, it is hereby ORDERED that the decision of the Commissioner denying benefits is AFFIRMED.

DONE this the ____ day of July, 2012.

/s/  Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE